UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

-against-

SYNDICATED FOOD SERVICES
INTERNATIONAL, INC., ET AL.,

        Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**04-CV-1303 (NGG) (ALC)**

NICHOLAS G. GARAUFIS, United States District Judge.

The Securities and Exchange Commission ("SEC") alleges that Defendants violated Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), as well as Rule 10b-5, 17 C.F.R. § 240.10b-5. (See Second Amended Complaint ("Complaint") (Docket Entry # 135).) Defendant Michelle Kramish Kain ("Kain") moves to dismiss the claims against her under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), and for summary judgment under Rule 56. (Docket Entry ## 144, 145.) Defendant William Keeler ("Keeler") moves to dismiss the claims against him under Rule 12(b). (Docket Entry # 177.) As set forth below, both motions are denied.

**I.    BACKGROUND**[1]

From at least June 1997 through February 2003, Nick Pirgousis and Frank Dolney orchestrated a broker bribery scheme involving the stock of nine public companies. (Complaint ¶ 1.) The SEC alleges that Pirgousis and Dolney sold stock surreptitiously into the public market for personal gain and paid undisclosed kickbacks to boiler rooms responsible for selling the stock

---

[1] The following facts are taken from the Complaint.

1

to the public. (Id.) The SEC further alleges that Pirgousis and Dolney made false and misleading statements in periodic reports and failed to file required disclosures regarding stock that they owned. (Id.)

One of the companies involved in the alleged scheme was Syndicated Food Service International, Inc. ("Syndicated"). (Id.) From 1999 until 2002, Keeler was Syndicated's Chief Executive Officer. (Id. at 17.) He is a resident of Florida. (Id.) Kain is an attorney who prepared Syndicated's SEC filings during a portion of 2000 and 2001. (Id. at 20.) Kain also prepared a Form 13D on behalf of Almond Resources Ltd. ("Almond"), an entity owned and controlled by Defendant Ian Brown, Sr. ("Brown"). (Id.) Kain resides in Florida. Id.

## II. PERSONAL JURISDICTION

Kain and Keeler both argue that the court lacks personal jurisdiction over them and move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2).

### A. Standard of Review for Personal Jurisdiction

"When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted). "[T]he plaintiff need only make a prima facie showing that the court possesses personal jurisdiction." Id. The pleadings are construed in the light most favorable to the plaintiff, and all doubts are resolved in its favor. Id.

The SEC's claims are based on the Securities Act of 1933 and the Exchange Act of 1934. Both statutes provide for worldwide service of process and permit the exercise of personal jurisdiction to the limit of the Fifth Amendment's Due Process Clause. See 15 U.S.C. § 77v(a); 15 U.S.C. § 78aa; SEC v. Unifund Sal, 910 F.2d 1028, 1033 (2d Cir. 1990). Kain and Keeler do

not argue that they were improperly served. Accordingly, they are subject to this court's jurisdiction unless its exercise would violate their Fifth Amendment due process rights.

The due process test for personal jurisdiction has two related components: (1) a "minimum contacts" inquiry, and (2) a "reasonableness" inquiry. See Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996). "The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction."[2] Id. If such contacts exist, the court may assert personal jurisdiction so long as "it is reasonable under the circumstances of the particular case." Id. at 568.

### B.     Minimum Contacts

In federal question cases brought under a statute where Congress has provided for worldwide service of process, a defendant's aggregate contacts with the United States govern the minimum contacts inquiry. See Chew v. Dietrich, 143 F.3d 24, 28 n.4 (2d Cir. 1998) ("The due process analysis is basically the same under both the Fifth and Fourteenth Amendments. The principal difference is that under the Fifth Amendment the court can consider the defendant's contacts throughout the United States, while under the Fourteenth Amendment only the contacts with the forum state may be considered."); see also SEC v. Softpoint, Inc., No. 95-CV- 2951 (GEL), 2001 U.S. Dist. LEXIS 286, at *15 (S.D.N.Y. Jan. 17, 2001) ("Second Circuit authority clearly establishes that the constitutionality of in personam jurisdiction in federal question cases where Congress has provided for worldwide service is to be determined by national, rather than local, contacts."); SEC v. Boock, No. 09-CV-8261 (DLC), 2010 U.S. Dist. LEXIS 59498, at *4 (S.D.N.Y. June 15, 2010) (applying national contacts test).

---

[2] Because "the leading Supreme Court cases defining the constitutional limits of the initial minimum contacts inquiry arose in state courts or in federal diversity cases," the test is often framed in reference to a "state," rather than, more generally, to the relevant sovereign. See SEC v. Softpoint, Inc., No. 95-CV- 2951 (GEL), 2001 U.S. Dist. LEXIS 286, at *7-*8 (S.D.N.Y. Jan. 17, 2001). The same basic framework applies, however, whether state or federal power is in question. See Chew v. Dietrich, 143 F.3d 24, 28 n.4 (2d Cir. 1998).

The minimum contacts requirement is satisfied where a defendant's conduct and connection with the United States are such that "he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). The Complaint alleges sufficient contacts by both Keeler and Kain. Both are citizens and residents of the United States and all of their alleged unlawful conduct took place in the United States. Indeed, neither Keeler nor Kain assert that they have insufficient contacts with the United States, but instead focus on their more limited connections to New York.

C.   **Reasonableness**

The reasonableness inquiry asks whether the assertion of personal jurisdiction in a particular case comports with "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945).[3] The following factors govern reasonableness: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 113 (1987).

Where a plaintiff demonstrates sufficient minimum contacts, a defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985); Asahi, 480 U.S. at 116 (Brennan, J., concurring) (finding that only in "rare cases" will inconvenience defeat the reasonableness of jurisdiction). The reasonableness inquiry is "largely academic in non-diversity cases brought under a federal law which provides for nationwide service of process" because of

---

[3] Kain addresses the reasonableness prong of the due process inquiry (see Supplemental Motion to Dismiss (Docket Entry # 144) 7-9), but Keeler does not. Nonetheless, Kain and Keeler are similarly situated for the purposes of the reasonableness determination.

4

the strong federal interests involved. Softpoint, Inc., 2001 U.S. Dist. LEXIS 286, at *20. "To date, while most courts continue to apply the test as a constitutional floor to protect litigants from truly undue burdens, few (and none in this Circuit) have ever declined jurisdiction, on fairness grounds, in such cases." Id.

With respect to the first reasonableness factor, Kain and Keeler reside in Florida, such that litigation in this court imposes some burden on them, at least relative to other possible forums. Yet this burden is relatively minor given the "realities of modern transportation and communication, as well as the nature of civil litigation." Softpoint, 2001 U.S. Dist. LEXIS 286, at *22. For example, Magistrate Judge Andrew L. Carter, Jr. has already authorized Kain to participate in status conferences telephonically. And much of the discovery burden described by Kain (see Kain Reply (Docket Entry # 147) 14-15) would apply regardless of the forum in which the case is litigated.

All of the other reasonableness factors strongly militate in favor of the court's exercise of jurisdiction. "The federal interest in adjudicating the dispute is clear and substantial" because the SEC's claims are "brought under the federal securities laws, an area of strong federal concern that falls at the center of Congress' commerce power." Hallwood Realty Partners, L.P. v. Gotham Partners, L.P., 104 F. Supp. 2d 279, 286 (S.D.N.Y. 2000). Both the SEC and the federal judicial system benefit from resolving this action in this court, which has already adjudicated a related criminal action and related civil claims. There are no state policies that militate against jurisdiction. As such, this is not one of the "rare cases" where special factors defeat the reasonableness of jurisdiction. Asahi, 480 U.S. at 116 (Brennan, J., concurring). To the contrary, subjecting Kain and Keeler to this court's jurisdiction is reasonable under the circumstances.

## III. SUFFICIENCY OF THE PLEADINGS

### A. Substantive Law

To state a claim under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, a plaintiff must plead that a defendant "(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." SEC v. Monarch Funding Corp., 192 F.3d 295, 308 (2d Cir. 1999). "Essentially the same elements are required under Section 17(a)(1)-(3) in connection with the offer or sale of a security, though no showing of scienter is required for the SEC to obtain an injunction under subsections (a)(2) or (a)(3)." Id.

### B. Pleading Standard

A court evaluating a Rule 12(b)(6) motion must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002). According to Federal Rule of Civil Procedure 8(a)(2), a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has recently explained that a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 555 U.S. 544, 570 (2007)). A motion for dismissal should be granted if the complaint consists merely of "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" without "further factual enhancement." Twombly, 550 U.S. at 555, 557.

While securities complaints brought by the SEC are not governed by the Private Securities Litigation Reform Act, they are subject to the heightened pleading standards imposed

6

by Federal Rule of Procedure 9(b) to the extent that they make allegations sounding in fraud. See SEC v. Espuelas, 579 F. Supp. 2d 461, 469 (S.D.N.Y. 2008). Rule 9(b) requires that a party state "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id.

"[T]he relaxation of Rule 9(b)'s specificity requirement for scienter must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." Shields v. Citytrust Bancorp., 25 F.3d 1124, 1128 (2d Cir. 1994). Rule 9(b) requires plaintiffs to "allege facts that give rise to a strong inference of fraudulent intent." Acito v. IMCERA Group, 47 F.3d 47, 52 (2d Cir. 1995). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id.

Reckless conduct is "at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Novak v. Kasaks, 216 F.3d 300, 308 (2d Cir. 2000). "[A]n egregious refusal to see the obvious or investigate the doubtful, may in some cases give rise to an inference of recklessness." Id.; see also In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 76 (2d. Cir. 2001) ("Where the complaint alleges that defendants knew facts or had access to non-public information contradicting their public statements, recklessness is adequately pled for defendants who knew or should have known they were misrepresenting material facts with respect to the corporate business."); In re BISYS Sec. Litig., 397 F. Supp. 2d 430, 441 (S.D.N.Y. 2005) ("Allegations of defendants'

knowledge of or access to contradictory information usually are sufficient to state a claim based on recklessness").

C.  **Allegations in the Complaint**

The SEC alleges that Kain made material misrepresentations or omitted material facts in six public filings that she prepared.

1) Two Amendments to Form 10-SB-12G Filed in 2001

The SEC alleges that, in connection with her work on two amendments to Syndicated's Form 10 that were filed in 2001, Kain reviewed past Syndicated filings, documentation related to Syndicated's Rule 504 offering, corporate minutes, transfer agent records, and transactions involving management and other affiliated persons. (Complaint ¶ 94.) The Complaint further alleges that Kain's review should have revealed that Pirgousis and Dolney were promoters of Syndicated in 1997 and controlled the 504 offering and that this fact was not disclosed in the amendments. (Id.)

2) Amendment to Form 10-KSB for the Period Ended December 31, 1999, Form 10-KSB for the Period Ended December 31, 2000, Form 10-QSB for the Period Ended September 30, 2001

The Complaint alleges that Kain prepared Syndicated's Amendment to Form 10-KSB for the period ended December 31, 1999, a Form 10-KSB for the period ended December 31, 2000, and a Form 10-QSB for the period ended September 30, 2001. (Id. at ¶¶ 103, 107, 114.) According to the Complaint, in each filing Kain failed to disclose (1) that Rockets Red Glare, Inc., one of Syndicated's major suppliers, was owned by Pirgousis's cousin and (2) that Pirgousis and Dolney were the directors of RCI General Contracting, Inc., a company that Syndicated owed $237,207. (Id. at ¶¶ 100, 104, 106, 113.) The Complaint alleges that Pirgousis

told Kain about his cousin's ownership of Rockets and that Kain created documents showing that Pirgousis and Dolney were directors of RCI. (Id. at ¶ 105.)

3) Almond's Form 13D

The Complaint alleges that Kain prepared a Form 13D on behalf of Almond, which was filed on August 9, 2001. (Id. at 117.) According to the Complaint, the Form 13D falsely stated that Almond was the beneficial owner of more than 1,300,000 Syndicated shares and failed to disclose shares beneficially owned by other Defendants. (Id. at 118, 119.) The Complaint alleges that Kain received a fax on August 3, 2001 that should have alerted her that Brown was the beneficial owner of Almond and that Kain should have been aware of other Defendants' involvement based on her interactions with Pirgousis and Dolney surrounding the filing. (Id. at 122.)

D. **Sufficiency of Allegations**

The Complaint sufficiently pleads fraud against Kain. With respect to each allegation of misconduct, it sets forth the relevant circumstances and provides facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. That is, the Complaint alleges that Kain received or reviewed information that should have alerted her that she was including false or misleading statements in Syndicated's public filings. See Fed. R. Civ. P. 9(b); see generally Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990) ("The primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based."); Lehman Bros. Commer. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co., 94-CV-8301 (JFK), 1995 U.S. Dist. LEXIS 15185, at *7 (S.D.N.Y. Oct. 10, 1995) ("Rule 9(b) is not intended to be an insurmountable hurdle for claimants to overcome, but was designed to afford defendants fair notice of the fraud alleged against them.").

Moreover, based on the record currently before it, the court cannot conclude that Kain's alleged omissions and misstatements were immaterial. See Ganino v. Citizens Utils. Co., 228 F.3d 154, 162 (2d Cir. 2000) ("Because materiality is a mixed question of law and fact, in the context of a Fed. R. Civ. P. 12(b)(6) motion, a complaint may not properly be dismissed . . . on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance."). Accordingly, Kain's motion to dismiss the Complaint under Rule 12(b)(6) must be denied.

## IV. SUMMARY JUDGMENT

Kain, in the alternative, seeks summary judgment under Federal Rule of Civil Procedure 56. Rule 12(d) provides that, if a court relies on matters outside the pleadings in deciding a 12(b)(6) motion, it must treat the motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Additionally, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Id.

The court has not relied on matters outside the pleadings and the parties have not fully addressed factual issues that could be determinative of Kain's liability. The court therefore declines to treat Kain's instant motion as one for summary judgment. See Global Network Communs., Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006) ("The streamlined testing of the substantive merits . . . is more appropriately reserved for the summary judgment procedure, governed by Rule 56, where both parties may conduct appropriate discovery and submit the additional supporting material contemplated by that rule.")

## IV. CONCLUSION

Because Kain and Keeler have sufficient contacts with the United States and because the court's exercise of jurisdiction is reasonable under the circumstances, Kain and Keeler's motions to dismiss for lack of personal jurisdiction are denied. The SEC has pled sufficient facts to state claims for securities fraud against Kain and her motion to dismiss the Complaint under Rule 12(b)(6) is also denied.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
September 2, 2010

NICHOLAS G. GARAUFIS
United States District Judge