

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
U.S. SECURITIES AND EXCHANGE
COMMISSION,

                      Plaintiff,                                           **MEMORANDUM & ORDER**

                -against-                                                     04-CV-1303 (NGG) (VLS)

SYNDICATED FOOD SERVICE
INTERNATIONAL, INC., et al.,

                      Defendants.
-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

      Before the court are pro se Defendant Adam Klein's and pro se Defendant William Keeler's objections to Magistrate Judge Vera M. Scanlon's Report and Recommendation ("R&R"), dated February 14, 2014, which recommended granting Plaintiff's motion for final judgments. (Dkt. 268.) Defendant Jeffrey Richardson did not object to the R&R. For the reasons set forth below, the R&R is ADOPTED in full.

## I. BACKGROUND

      On March 29, 2004, the Securities and Exchange Commission ("SEC") commenced this action against Defendants William Keeler, Adam Klein, and Jeffrey Richardson (collectively, the "Subject Defendants"), along with sixteen other named defendants, to remedy alleged violations of the federal securities laws in connection with the alleged manipulation of the market for securities issued by Syndicated Food Service International, Inc. ("Syndicated Food"). (Compl. (Dkt. 1).) Each Subject Defendant consented to partial judgments against them as to liability, which were entered by the court between March 2009 and October 2011. (J. as to Adam Klein, Mar. 4, 2009 (Dkt. 95); J. as to William Keeler, Oct. 31, 2011 (Dkt. 207); J. as to Jeffrey Richardson, Mar. 12, 2009 (Dkt. 101).) The consent agreements provided that the allegations

1

contained in the operative pleadings—the original Complaint for Mr. Klein (Dkt. 1), the Amended Complaint for Mr. Richardson (Dkt. 86), and the Second Amended Complaint for Mr. Keeler (Dkt. 135)—would be deemed true for the purposes of the instant motion. (R&R at 3.) In short, the Subject Defendants were accused of participating in a massive broker bribery scheme in which the stock of nine public companies, including Syndicated Food, of which Defendant Keeler was the CEO, was surreptitiously sold into the public market for personal gain and for undisclosed kickbacks. (See id. at 4.) Defendants Klein and Richardson were both active participants in this scheme. (Id. at 4-7.)

Unable to reach an agreement on the proper measures of disgorgement, civil penalties, and prejudgment interest that should be paid by the Subject Defendants pursuant to their consent agreements, the SEC filed a motion for final judgments against the Subject Defendants on April 23, 2013. (Pl. Mot. for Final J. (Dkt. 245).) The SEC's motion seeks final judgments ordering disgorgement, prejudgment interest, and civil penalties against Defendants Adam Klein and Jeffrey Richardson, and a final judgment ordering civil penalties against Defendant William Keeler. (Id.) The court referred this motion to Magistrate Judge Vera M. Scanlon for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b)(1) to address the merits of Plaintiff's motion and the proper measure of damages. (See Order, Apr. 25, 2013 (Dkt. 247).)

A telephonic inquest hearing was held before Judge Scanlon on January 30, 2014. Counsel for the SEC and Defendant Richardson appeared, and Defendants Keeler and Klein participated pro se. In connection with that proceeding, the parties were invited to submit additional documents to be considered by the court. (Scheduling Order, Jan. 21, 2014.) Only the

SEC filed additional exhibits. (See Letter, Jan. 27, 2014 (Dkt. 265); Letter, Jan. 30, 2014 (Dkt. 266).)

On February 14, 2014, Judge Scanlon issued an R&R recommending that the SEC's motion be granted in part and denied in part. Specifically, the R&R recommends: (1) disgorgements in the amount of $274,000 from Mr. Richardson and $151,500 from Mr. Klein; (2) no prejudgment interest for any Subject Defendant; and (3) civil penalties in the amounts of $55,000 against Mr. Richardson, $5,500 against Mr. Klein, and $220,000 against Mr. Keeler. (R&R at 40.) The R&R was filed electronically and copies were mailed to pro se Defendants Keeler and Klein by the Clerk of the Court.

On February 28, 2014, within the fourteen-day window for parties to object to the R&R, Defendant Klein filed a Motion for Sanctions pursuant to Federal Rule of Civil Procedure 37. (Mot. for Sanctions & Recons. ("Klein Obj.") (Dkt. 269).) Contending that the SEC had violated its discovery obligations under Rule 26, Klein asks that the court preclude two documents from being allowed into evidence to support the SEC's motion and that the court "[r]econsider the recommendation" for disgorgement against him. (Klein Obj. at 3.) For the reasons set forth below, and in recognition of Defendant Klein's pro se status, the court considers the purported motion to be a timely filed objection to the R&R pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72(b)(2). The SEC filed a response to Defendant Klein's motion on March 24, 2014. (SEC's Memo. of Law in Opp'n to Klein Obj. ("Klein Resp.") (Dkt. 274).)

Also on February 28, 2014, Defendant Keeler attempted to send an email to Judge Scanlon detailing his objections to the R&R. The email was never received, however, and Defendant Keeler failed to comply with the court's March 6, 2014, Order directing him to properly file his objections on the docket. (Mar. 6, 2014, Order.) The SEC, which received

3

Keeler's email, responded to the objections by letter dated March 5, 2014. (Letter, Mar. 5, 2014 ("Keeler Resp.") (Dkt. 270).) At the court's request, the SEC docketed Defendant Keeler's February 28, 2014, email on March 18, 2014. (Dkt. 273 ("Keeler Obj.").) Citing his current health woes and financial hardship, as well as disputing his participation in the underlying fraud, Keeler's email requests that the court consider dismissing the "charges" against him. (Id.) In recognition of Defendant Keeler's pro se status, the court considers the objections as timely filed.

## II. STANDARD OF REVIEW

When a magistrate judge issues an R&R and it has been served on the parties, the parties have fourteen days in which to file an objection to the R&R. Fed. R. Civ. P. 72(b)(2). If the district court receives timely objections to the R&R, the court makes "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [The district court] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). However, to obtain de novo review, an objecting party "must point out the specific portions of the report and recommendation to which [he] object[s]." U.S. Flour Corp. v. Certified Bakery, Inc., No. 10-CV-2522 (JS), 2012 WL 728227, at *2 (E.D.N.Y. Mar. 6, 2012); see also Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [R&R].").

If a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entergris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008); see also Mario v. P&C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002) (holding that plaintiff's objection to an R&R was "not specific enough" to "constitute an adequate objection under [] Fed. R. Civ. P. 72(b)"). Portions

4

of the R&R to which a party makes no objection are also reviewed for clear error. U.S. Flour, 2012 WL 728227, at *2.

## III. DISCUSSION

### A. Klein Objection

Though filed in response to Judge Scanlon's R&R, Defendant Klein's objections to the R&R are styled as a motion for sanctions against the SEC pursuant to Federal Rule of Civil Procedure 37. (Klein Obj. at 1.) Klein's motion argues that two documents submitted by the SEC should have been, or should be, precluded from being used as evidence when calculating his disgorgement obligation.[1] (Id. at 2-3.) However, demonstrating the Defendant's intent to object to the R&R, the motion concludes: "WHEREFORE, I respectfully request that the Court grant this motion and Reconsider the recommendation for disgorgement." (Id. at 3.) The court accordingly interprets Klein's motion as a timely-filed objection to the R&R; though, in recognition of his pro se status, it will also address the merits of Klein's petition as if it were a stand-alone discovery motion.

At issue in the Klein Objection are two exhibits filed by the SEC on January 27, 2014, in anticipation of the January 30, 2014, inquest hearing before Judge Scanlon. (Letter, Jan. 27, 2014 (Dkt. 265), Exs. 2, 3.) The challenged documents are two sample account statements that purport to show individual stock trades executed by Defendant Klein and Joseph Ferragamo,[2]

---

[1] Defendant Klein does not appear to contest the R&R recommendation that he be required to pay $5,500 as a civil penalty.

[2] Though originally named as a defendant in this suit, the SEC did not request that Mr. Ferragamo disgorge profits or receive a civil penalty as part of this case. (See R&R at 6.) Rather, Mr. Ferragamo was the subject of a criminal judgment in the District of New Jersey, which required him to pay over $4 million in restitution to his victims. United States v. Ferragamo, No. 05-CV-29 (D.N.J. Apr. 18, 2006) (Dkt. 7). Ferragamo was also sentenced to fifty-one months imprisonment and three years supervised release. (R&R at 7 n.3.) As discussed in the R&R, the District of New Jersey's restitution order against Ferragamo indicates that the Syndicated Food fraud was one of three separate frauds on which the $4 million restitution award was premised. However, after reviewing the record in Ferragamo's criminal case, neither Judge Scanlon nor this court is able to determine what portion of the total restitution award is attributable to the Syndicated Food fraud. (See R&R at 6-7.)

5

another LH Ross Branch representative involved in the Syndicated Food fraud. (R&R at 16; Tr. at 14:2-15:4.)[3] Among other things, the account statements illustrate that Messrs. Klein and Ferragamo shared a "Rep Number," which both the SEC and Klein agree makes it effectively impossible at this late stage to apportion the illicit kickbacks paid on trades associated with their Rep Number between them. (See R&R at 6, 17-18; Tr. at 14:2-15:13.) Based on a spreadsheet provided by the SEC, to which Defendant Klein did not object, Judge Scanlon determined that the shared Rep Number was associated with trades involving 67,550 shares of Syndicated Food stock, which resulted in the payment of $151,500 in illicit kickbacks. (R&R at 16-19.)

Defendant Klein's objection challenges Judge Scanlon's purported reliance on these two documents in support of the R&R recommendation that he be ordered to disgorge the full $151,500. (Klein Obj. at 2-3.) Arguing that the SEC's supplemental production on January 27 gave him "no additional time to prepare any further opposition responses" and that the account statements should instead have been produced with the other documents provided by the SEC in June 2013—which he asserts the SEC "claim[ed] to be all the discovery gathered during the investigation"—Klein contends that the SEC violated its discovery obligations and that the account statements should be accordingly precluded from being used as evidence. (Id. at 2-3.)

In deciding whether to exercise its discretion to preclude evidence as a discovery sanction, the Second Circuit directs courts to consider: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Sofitel, Inc. v. Dragon Med. & Sci. Commons, Inc., 118 F.3d 955, 961 (2d Cir. 1997). For the reasons detailed below,

---

[3] Unless otherwise indicated, citations in the form "Tr.__" refer to the Inquest Hearing Transcript, dated January 30, 2014. (Dkt. 267.)

Defendant Klein's objection that the sample account statements should have been, or should be, precluded fails on several grounds, even if considered as an independent motion for sanctions.

As a threshold matter, there is no evidence of any wrongdoing by the SEC. Defendant Klein's consent agreement—in which he agreed that the court "shall order disgorgement of ill-gotten gains"—expressly provided that the parties may take discovery in connection with the SEC's motion for final judgments. (Mot. to Approve Consent J. of Adam Klein, Feb. 27, 2009 (Dkt. 88) at 2-3.) However, that discovery was limited to those documents or types of documents specifically identified and requested by the Subject Defendants as bearing upon the SEC's penalties calculations. (Status Conf. Tr., May 17, 2013 (Dkt. 272) at 23:2-24:7, 25:21-26:6.) There is no indication that Defendant Klein ever requested production of his customers' account statements or similar documents. (See, e.g., Tr. at 22:2-22; see also Klein Resp. 3-5 (describing May 17, 2013, status conference at which parties discussed how discovery would proceed).) Indeed, during a telephonic status conference on June 10, 2013, counsel for the SEC stated that it had provided all discovery requested by Mr. Klein; namely, transcripts of testifying witnesses and a spreadsheet showing all transactions the SEC intended to use in establishing its disgorgement figure. (Status Conf. Tr., June 10, 2013 (Dkt. 270) at 2:24-3:14, 5; see also id. at 12:2-4, 12:25-13:15 (when prompted by the court, Defendant Klein did not request any additional discovery); Klein Resp. at 5-8.) Nor does the SEC's June 4, 2013, production email "claim[] to be all of the discovery gathered during the investigation," as Klein suggests. (Klein Obj. at 2; see also id. at 6 (attaching a copy of the SEC's June 4, 2013, email producing documents "[i]n response to [Klein's] request for documents.").) In addition, Defendant Klein does not point to any order of the court that would have otherwise obligated the SEC to disclose

7

the account statements or that formally closed discovery in this matter.[4] Quite to the contrary, in her January 21, 2014, Scheduling Order, Judge Scanlon directed the parties to produce any additional documents they intended to rely on at the inquest hearing that had not already been disclosed to the other parties during discovery. (Scheduling Order, Jan. 21, 2014; R&R at 10; see also Klein Resp. 8.) As such, Klein's objection does not establish the existence of a discovery violation on which the court might premise a preclusion sanction.

Even if the court were to find wrongdoing by the SEC, which it does not, Klein cannot prove either that the evidence was particularly critical to the R&R disgorgement recommendation or that he was prejudiced by its admission. First, the account statements at issue were used by the SEC for the limited purpose of showing that Messrs. Klein and Ferragamo shared a "Rep Number" and that as a result it would be difficult, if not impossible, to apportion their ill-gotten gains beween them based on which individual executed a particular trade. (See R&R at 6, 17-18; Tr. at 14:2-15:13; Klein Resp. 8-9 (describing purpose for producing account statements).) But Klein admitted that this was the case at the inquest hearing (id. at 15:8-13 (stating "[u]nfortunately I don't have any way to determine that")), and the shared Rep Number additionally appears on the spreadsheet provided to Defendant Klein by the SEC, to which he does not object (Klein Obj. 2-3; Letter, Jan. 27, 2014, Ex. 1.) The court accordingly finds that the account statements were not necessary to Judge Scanlon's decision to hold

---

[4] To the extent that Defendant Klein premises his request for preclusion on the SEC's initial disclosure obligation under Federal Rule of Civil Procedure 26(a), that too is without merit. The partial judgment entered against Defendant Klein makes clear that the Defendant would be entitled to limited discovery only "in connection with the Commission's motion for disgorgement and/or civil penalties." (J. as to Defendant Adam Klein, Mar. 4, 2009 (Dkt. 95) at 4.) As the transcripts of the May 17, 2013, and June 10, 2013, status conferences before Judge Scanlon make clear, Klein was afforded a full and fair opportunity to seek discovery from the SEC, but did not request production of any customer records. While the court is sensitive to Defendant's pro se status, it is unwilling to impose the harsh sanction of preclusion on these facts.

8

Defendant Klein severally but not jointly liable for disgorging the full $151,500 figure.[5] (R&R at 19-24.) Second, and perhaps more importantly, Mr. Klein expressly disclaimed any prejudice caused by the delayed production of these documents on the record. When asked by Judge Scanlon whether he felt that he'd had an adequate opportunity to review the Government's submission, including the additional exhibits, he responded "[y]es." (Tr. at 10:1-10-13, 11:9-10, 11:25-12:2.)

In sum, because Klein fails to establish any misconduct on the part of the SEC or that the SEC's provision of the two sample account statements prejudiced him, the court rejects his request for preclusion under Rule 37, regardless of whether it is viewed as an objection or as an independent motion.

### B. Keeler Objection

By his February 28, 2014, email to Judge Scanlon, Defendant Keeler appears to challenge the R&R's recommendation that he be required to pay a civil penalty of $220,000, requesting instead that the court "consider dismissing the[] charges against [him]." (Keeler Obj.) But Keeler's correspondence does not indicate with any degree of specificity the portion of the R&R

---

[5] The court notes that the R&R equitably reduced the civil penalties owed by Defendant Klein from the $220,000 requested by the SEC to $5,500 in recognition of his less prominent role in the Syndicated Food fraud, his age and family financial pressures at the time, and his current and future financial situation. In the court's view, the equitable relief afforded by the R&R appropriately balances, in practical effect if not by design, the severity of Defendant's disgorgement liability. As capably explained in Judge Scanlon's R&R, the $151,500 in illicit profits attributable to the shared "Rep Number" represents the *only* "reasonable approximation of the profits causally connected to the violation" that is possible on these facts. S.E.C. v. First Jersey Sec., Inc., 101 F.3d 1450, 1475 (2d Cir. 1996) (internal quotation marks and citation omitted). (See also R&R at 16-18, 20.) The burden of proving how much of those profits were attributable to his co-conspirator was rightly placed on Defendant Klein, see First Jersey Sec., 101 F.3d at 1475, which he was unable to do (R&R at 21-22.) The uncertainty that prevents the court from more accurately estimating Defendant Klein's portion of the joint profits is entirely of his own making. Nor does the court believe it would be appropriate to offset Ferragamo's criminal restitution payments against Defendant Klein's disgorgement penalty. See S.E.C. v. Credit Bancorp, Ltd., No. 99-CV-11395 (RWS), 2011 WL 666158, at *1-3 (S.D.N.Y. Feb. 14, 2011) ("The distinction between disgorgement and criminal restitution is that, unlike restitution, 'the primary purpose of disgorgement to [the SEC] is not to compensate investors,' but rather to force 'a defendant to give up the amount by which he was unjustly enriched.'" (citations omitted)), aff'd sub nom. S.E.C. v. Blech, 501 F. App'x 74 (2d Cir. 2012). Having no means by which to determine what portion of Ferragamo's criminal restitution obligation is tied to his participation in the Syndicated Food fraud, any offset would be entirely speculative.

to which it objects. See Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008). Even though he did not oppose the SEC's motion for final judgments, Keeler now requests that the "charges" against him be dismissed because (1) he was "never a part of the insider trading scheme" and his signature was applied to relevant filings without his permission and (2) he suffers from poor health and lacks the ability to pay the recommended penalties. (Keeler Obj.) These generalized objections are insufficient to trigger de novo review, and also are insufficient to overcome the R&R's carefully reasoned recommendation under a clear error review.[6]

Defendant Keeler's argument that he did not participate in the fraud is improper. The court's October 18, 2011, judgment against Keeler—which was entered pursuant to his signed consent agreement with the SEC—provides that:

> In connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of the Consent or this Judgment; [and] (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court . . . .

(J. as to Def. William Keeler, Oct. 18, 2011 (Dkt. 207) at 4; see also id. at 7-8 (consent agreement providing that "Defendant agrees that the Court shall order . . . a civil penalty" subject to the same limitations).) Accordingly, to the extent that the Keeler's objection contests the operative pleading's factual allegations concerning his participation in the Syndicated Food fraud, it violates the clear terms of this court's prior judgment and is therefore improper. (See Keeler Resp. at 2.)

---

[6] Defendant Keeler's objection also details certain communications made by counsel for the SEC to him in connection with his decision to sign the consent agreement. (Keeler Resp.) These discussions occurred in the context of settlement, and will not be considered by the court both as a matter of evidentiary practice and in light of the express terms of the court's judgment against Mr. Keeler.

10

The objection's unsubstantiated reference to Defendant Keeler's poor health and financial condition, while unfortunate, also is insufficient to further reduce the R&R's recommendation of civil penalties. As a preliminary matter, the court notes Keeler did not object to the instant motion or otherwise bring these purported mitigating factors to Judge Scanlon's attention, as would have been proper. See U.S. Flour, 2012 WL 728227, at *2 ("[E]ven in a de novo review of a party's specific objections, the court ordinarily will not consider 'arguments, case law and/or evidentiary material which could have been but [were] not, presented to the magistrate judge in the first instance.'" (citation omitted)). Nor does he argue that the court should equitably reduce the R&R's recommended civil penalties in light of these facts; rather, he argues for the wholesale dismissal of the SEC's "charges." For the reasons just discussed, this request is rejected. In his role as CEO of Syndicated Food during the relevant period, Keeler committed—both through direct participation and as a control person—"willful and serious violations" of the securities laws that caused "substantial harm to [the] victims" of the Syndicated Food fraud. (R&R at 39; see also Compl. (Dkt. 1) ¶¶ 109-16 (describing Keeler's involvement).) Moreover, the R&R does account for the fact that Keeler did not obtain any profits from his actions, reducing the civil penalty sought by the SEC from $330,000 to $220,000. (R&R at 38-40.) The court sees no cause for a further reduction in the R&R's recommendation on civil penalties, much less the desired "dismissal" of all claims against Defendant Keeler. Finding no cause to modify the R&R under either a clear error or de novo standard, the objection accordingly is overruled.

## IV. CONCLUSION

For the reasons set forth above and finding no clear error, see Porter v. Potter, 219 F. App'x 112 (2d Cir. 2007), the court ADOPTS the R&R in its entirety. Plaintiff's motion for final judgments accordingly is GRANTED in part and DENIED in part, and judgments shall be

entered as follows: (1) for Defendant Richardson, judgment in the amount of $329,000, representing $274,000 in disgorgement and $55,000 in civil penalties; (2) for Defendant Klein, judgment in the amount of $157,000, representing $151,500 in disgorgement and $5,500 in civil penalties; and (3) for Defendant Keeler, judgment in the amount of $220,000 in civil penalties. No Subject Defendant shall be assessed prejudgment interest.

The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
March 26, 2014

NICHOLAS G. GARAUFIS
United States District Judge